IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:92-CR-290-WKW |
| | ) | [WO] |
| JOHN CARLOS TYNER | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant John Carlos Tyner's motion to dismiss the petition for revocation of supervised release. (Doc. # 19.) Upon consideration of the parties' filings, the facts introduced at the hearing on October 24, 2019, and applicable law, this motion is due to be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

This case spans twenty-seven years and three different judges of this district. Mr. Tyner plead guilty on November 10, 1992, to bank robbery and to using and carrying a firearm during and in relation to a crime of violence. (Doc. # 1, at 3; Doc. # 1-1.) On February 9, 1993, Judge Robert Varner sentenced Defendant to ninety-seven months in prison followed by four years of supervised release. (Doc. # 1-3, at 1–3.) His term of supervised release began on March 22, 2002. (Doc. # 4, at 1.)

On August 4, 2004, Defendant was arrested for aggravated child molestation in Georgia. On September 9, 2004, the United States Probation Office (USPO)

petitioned for revocation of Defendant's supervised release and for an arrest warrant on the grounds that his arrest violated the condition that he "not commit another federal, state, or local crime." (Doc. # 1-4.) Judge W. Harold Albritton, III ordered the issuance of a warrant, which was initially lodged as a detainer with the Muscogee County Jail in Columbus, Georgia. (Doc. # 1, at 4.) On October 20, 2005, Mr. Tyner plead guilty to aggravated child molestation and was sentenced to fifteen years in Georgia state prison. (Doc. # 14-2, Gov. Ex. 2.)

On April 12, 2007, the United States Marshals Service ("USMS") lodged a detainer with the State of Georgia. That detainer specified that an arrest warrant had been issued charging Mr. Tyner with "violation of the conditions of probation and/or supervised release," and it requested that Mr. Tyner be given a copy of the detainer. (Doc. # 1-6.) The Georgia Department of Corrections ("GDC") returned a document indicating that Mr. Tyner was notified of the detainer on April 16, 2007. (Doc. # 22-2, Gov. Ex. 2.) Mr. Tyner testified that he was not notified of the detainer then.

Following Mr. Tyner's release from GDC custody, he was arrested in Georgia on August 7, 2019, and transferred to the Middle District of Alabama. (Doc. # 7.) The USPO filed an amended petition for revocation of supervised release on August 8, 2019, which noted Mr. Tyner's conviction. (Doc. # 4.) Mr. Tyner filed this motion to dismiss on October 17 and supplemented it on October 28, 2019. (Docs. # 19, 23.) The Government filed written responses on October 21 and

November 18, 2019.  (Docs. # 21, 25.)  A revocation hearing was held on October 24, 2019 and was continued until December 9, 2019.

## II.  DISCUSSION

Mr. Tyner argues that his procedural due process rights have been violated because the Government failed to provide him with notice and a hearing on the allegations during the fifteen years between the filing of the initial petition and his release from GDC custody.  He argues that the delay has prejudiced his defense.  The Government contends that Mr. Tyner was not legally entitled to notice until he was in federal custody and that he did, in fact, receive notice of the detainer in 2007.

**A.  Mr. Tyner was not entitled to notice of his pending revocation proceedings until he was in federal custody.**

This motion presents issues of both law and fact.  Whether Mr. Tyner was, in fact, given notice that he may be subject to revocation proceedings is in dispute.  The Government contends that Mr. Tyner was provided with notice because the GDC produced a document indicating that Mr. Tyner was informed of the detainer on April 16, 2007.  (Doc. # 22-2; Gov. Ex. 2.)  The Government argues that this document should be conclusive on this issue because "[o]fficial acts of public officers are presumed regular in the absence of clear and convincing evidence to the contrary."  (Doc. # 25, at 7 (collecting cases).)  Mr. Tyner testified that he did not receive notice in 2007 and that he was expecting to be released on his GDC release date.  He argues that this belief was buttressed by a 2016 letter from USPO

3

investigator Sharon Shannon informing his institution that he has time remaining on his supervised release and should report to the USPO upon release from GDC. (Doc. # 22-3; Def. Ex. 1.) Mr. Tyner also points to a letter sent from GDC's Director of Inmate Administration to the USMS on April 19, 2007, which states that the warden who has custody of Mr. Tyner "will be instructed to inform the inmate of the source and content of your detainer." (Doc. # 22-3; Def. Ex. 3.) Because the court concludes that Defendant is not entitled to dismissal, it will assume *arguendo* that Mr. Tyner was not given notice of the pending revocation proceedings until his 2019 release.

Persons on supervised release are entitled to due process before they can be deprived of their liberty through release revocation. *Moody v. Daggett*, 429 U.S. 78, 85 (1976) (holding that the "conditional freedom of a parolee generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment"); *United States v. Copeland*, 20 F.3d 412, 414 (11th Cir. 1994) ("The same protections granted those facing revocation of parole are required for those facing the revocation of supervised release."). These protections include the right to notice of the allegations and a hearing. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). These rights and the protections of Federal Rule of Criminal Procedure 32.1 attach when the releasee is deprived of his liberty by federal officials for release violations. *Moody*, 429 U.S. at 87; *United States v. Cunningham*, 150 F. App'x 994,

996 (11th Cir. 2005) (per curiam). Consequently, the Government was not required to give Mr. Tyner notice and a hearing during his state incarceration.

**B.     Mr. Tyner has not made a sufficient showing that he was prejudiced by the delay between the filing of the first revocation petition and his initial appearance.**

The Government delays notice and supervised release revocation hearings at its peril. Even though Mr. Tyner was not entitled to notice and a hearing as a matter of right within some specified time period, unreasonable delay can constitute a due process violation if he is prejudiced by the delay or if the Government has engaged in misconduct.

The Fifth Circuit[1] has held that "in [probation] revocation cases, even if the prisoner admits the violation, he may be prejudiced if delay has impaired his ability to present evidence of mitigating circumstances that might affect the decision to incarcerate him and the conditions of incarceration." *United States v. Williams*, 558 F.2d 224, 227 (5th Cir. 1977); *see also United States v. Santana*, 526 F.3d 1257, 1260 (9th Cir. 2008) ("[O]ur cases considering due process claims for revocation proceedings have held that relief is not called for unless there was both unreasonable delay and prejudice. 'Reasonableness' is itself a sort of balancing judgment in which the length of delay is considered in connection with the reasons for the delay."

---

[1] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

(internal citations omitted)); *United States v. Throneburg*, 87 F.3d 851, 853 (6th Cir. 1996) ("[D]efendant's due process concerns about delay come into play only when the delay has prejudiced the defendant's ability to contest the validity of the revocation."); *United States v. Tippens*, 39 F.3d 88, 90 (5th Cir. 1994) ("[A] delay in executing a violator's warrant may frustrate a probationer's due process rights if the delay undermines his ability to contest the issue of the violation or to proffer mitigating evidence."). "While the Eleventh Circuit does not appear to have expressly adopted the *Barker* [*v. Wingo*] analysis for cases involving delays in parole revocation or probation revocation hearings, it has applied *Barker*-like standards when considering whether delays in the context of parole or probation hearings have amounted to violations of due process." *Noe v. Ala. Bd. of Pardons & Paroles*, No. 2:08-cv-31, 2010 U.S. Dist. LEXIS 101764, at *7 (M.D. Ala. Aug. 17, 2010) (citing *United States v. Taylor*, 931 F.2d 842, 848 (11th Cir. 1991)), *adopted by* 2010 U.S. Dist. LEXIS 101765 (M.D. Ala. Sept. 27, 2010). "The *Barker* analysis of speedy trial claims focuses on the length and reason for the delay and the resulting prejudice." *Id.*

Deceptive conduct by the government coupled with such delay has also served as grounds for reversing revocation decisions. *United States v. Hamilton*, 708 F.2d 1412, 1415 (9th Cir. 1983) ("Revocation of probation after unreasonable delay or under circumstances inherently misleading to the probationer is an abuse of

discretion."); *United States v. Tyler*, 605 F.2d 851, 853 (5th Cir. 1979). In *Tyler*, for example, a probation officer brought two-year-old violations to the district court's attention only after revocation for a later violation was denied. *Tyler*, 605 F.2d at 853. In *Hamilton*, the Ninth Circuit held that the defendant's probation could not be revoked three years after he failed to complete his jail sentence when he attempted to reschedule his sentence at the time of default and neither the court nor the probation officer took action. *Hamilton*, 708 F.2d at 1414–15. This case does not involve such intentional gamesmanship. Therefore, Mr. Tyner must show that he was prejudiced by an unreasonable delay.

The fifteen-year delay in this case is unreasonable. The Government knew where Mr. Tyner was, and his conviction provided all the information it needed to make its case for revocation. Mr. Tyner has raised several possible ways his defense could have been prejudiced by the delay in notice and a hearing on his alleged violation: (1) evidence to contest the violation or to offer mitigation is no longer available, (2) he was deprived of the opportunity to have his sentences run concurrently, (3) he was limited in his access to prison programs while the detainer was in effect, and (4) a federal defender could have advised Mr. Tyner at the time of his plea that his supervised release would expire soon. (Docs. # 19, 23.)

Three of these arguments warrant little discussion. The law in this circuit clearly holds that Mr. Tyner is not entitled to a hearing to argue for concurrent

7

sentences. *See Cunningham*, 150 F. App'x at 995–96. Mr. Tyner has not elaborated on his third argument that the detainer limited his access to prison programs, aside from his inability to be transferred to a halfway house. Mr. Tyner's fourth argument is meritless because then, as now, 18 U.S.C. § 3583(i) permitted the "adjudication of matters arising before" a term of supervised release has expired "if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L No. 103-322, § 110505, 108 Stat. 1796, 2017 (enacting this provision). The first warrant in this matter was issued on September 9, 2004, during the supervised release term. Mr. Tyner could not have escaped revocation proceedings regarding his initial arrest even if his conviction did not occur until after his term of release had expired. A conviction obtained after his release expired would still be evidence that he committed the alleged violation while on release. Therefore, the court will only discuss Mr. Tyner's claim that he was prejudiced by the loss of witnesses and evidence that could rebut the allegation or inform the court of mitigating circumstances.

Mr. Tyner has unquestionably struggled to find evidence or contemporaneous witnesses who could rebut the alleged violation. His counsel's investigator testified that she was unable to locate the mother of his victim, and his counsel informed the court after the hearing that efforts to locate the victim herself were equally

unavailing. (Doc. # 23, at 3.) However, Mr. Tyner is not prejudiced by their loss because his guilty plea, an admission under oath, belies any later assertion that he did not break a state law. *See Morrissey*, 408 U.S. at 490 ("Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime.").

Mr. Tyner's argument that mitigating evidence that was available at the time of the arrest and conviction is now lost is more compelling. His due process right to offer mitigating evidence is separate from his right to rebut the charge and is not eliminated by his guilty plea. *See Williams*, 558 F.2d at 227. Defendant's counsel argued at the October 24 hearing that Mr. Tyner was deprived of the opportunity to have a professional evaluation of his mental state performed close to the time of the alleged violation. However, Mr. Tyner has not presented any evidence (such as his own testimony) that this is more than a speculative concern, and he will have the opportunity to testify about his mental state at his final revocation hearing. Mr. Tyner can also offer mitigating evidence in the form of friend and family testimonials at his revocation hearing. In light of these considerations, Mr. Tyner has not made a sufficient showing that he is prejudiced in his ability to defend against the allegations or to offer mitigating evidence.

## III.  CONCLUSION

For these reasons, it is ORDERED that Defendant's motion to dismiss the petition for revocation of supervised release (Doc. # 19) is DENIED.

DONE this 4th day of December, 2019.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE
